Case number 24-3033, Ohio ex rel Dave Yost v. Ascent Health Services, LLC, argument not to exceed 15 minutes per side. Mr. Howley, you may proceed for the appellate. Good morning. Good morning, your honors. May it please the court. My name is Dan Howley, and I represent Ascent Health Services, the Cigna Group, Express Scripts, and Ever North Health. I'd like to reserve two minutes for rebuttal. Sure. The district court's decision to remand should be reversed because defendants meet the three requirements for federal officer removal as established in the case law. The plaintiff's disclaimer is ineffective. The rebating and pharmacy negotiation conduct at issue in the case is inseparable from conduct defendants undertook in connection with the federal programs for OPM and DOD. This is defendant's theory of the case, which is explained in the notice of removal and is supported via declarations in the opposition to the motion to remand. The Supreme Court has made clear in Jefferson County v. Acker that, in the context of applying federal officer removal statute, defendant's theory of the case must be credited by the court. Here, the court should have no concern about applying Acker and crediting defendant's theory of the case. Both the First Circuit and the Fourth Circuit have accepted the same theory of the case put forward by PBM defendants in similar cases brought by different state AGs and state court. We push this indivisibility point and just, you know, why can't you separate this stuff out? I mean, it seems like government stuff is separated out all the time. Maybe you could just talk through that a little bit. I mean, the rebates, couldn't you kind of segregate the rebates? Well, yes, Judge Sutton. That's a good question. What has happened in practice here and what has happened in the past, and I think it's important to understand that the complaint attacks things that happened in the past, was they were not separated. And the theory of the case here that the complaint spells out is that the rebating negotiations— You can still disclaim relief, right? I mean, I think your point about past is a good one. It's done. But can't the plaintiffs still disclaim relief that, you know, leads to officer removal? Certainly the plaintiffs could disclaim seeking recovery for payments to DOD. But what is important here, I think, is that the negotiations were unitary, and what they're complaining about is the increase in list price. So the theory of the case on the plaintiff's side, and as spelled out in the complaint, is that when the PBMs negotiated with drug manufacturers for discounts or rebates, that that caused the drug manufacturers to increase the list price or sticker price for those drugs. And it's that increase in the list price or sticker price that allegedly harmed Ohio patients that paid a portion of that list price. Counsel, can you walk me through the OPM regulations that govern the negotiations themselves? I understood, I think, quite well from your briefing how the regulations govern kind of what comes out of the negotiation. Like, you negotiate for all these rebates and things like that, and the price to pay for any drug from a manufacturer. And then out of that, you know, some rebates have to get passed on, or out of that there may be audits about whether the rebates get passed on or things like that. But what strictures does the federal government, like, place on the negotiations themselves? So the federal government, through OPM, contracts with insurers who then subcontract with PBMs, including Prime Therapeutics and MyClientExpress scripts. Those, OPM does not directly direct that you must do those negotiations together, but OPM is looking for the best... I'm not asking about together or not together. I'm just saying, like, does OPM say, like, for the, you know, the plans that are part of the FEBA program or things like that, you know, we're never going, you know, you can't negotiate, we're never going to pay more than X amount of money for this drug or for this class of, you know, types of pharmaceuticals. You know, these are the limitations of the negotiations. I'm trying to get what the difference is here between the control over the negotiations and just buying a product off the shelf. Judge Blomkatz, they do not direct at that level of detail, you know, that they will pay X amount for insulin and Y amount for another pharmaceutical drug. That's not the level of direction that is provided by OPM. OPM relies on, there are, there's an OPM standard contract, carrier contract that we cite, and that envisions rebates being negotiated. OPM is, I believe, obliged to get the best deal that they can, that they negotiate these terms. There are terms in the OPM standard contract that relate to how rebates must be treated and accounted for and passed through. And then there are contracts between those insurers and their subcontractor, the PBMs, that dictate further terms. And so if, in the Taufin Declaration that was submitted, there is a contract by Prime related to the largest FEHB plan in the country, and that says that Prime shall negotiate to obtain rebates. There are terms that are... But that's like, you know, they shall make sure we have prescription drugs, or they shall, you know, obtain, you know, earplugs for the military, right? But I don't know that we would say that just buying a product off the shelf or, you know, the government having a contract, even negotiating a better price for a contract for any sort of given product would then give the manufacturer of that product federal officer removal. So I'm trying to... And I understand, I think I understand the argument about, you know, all the negotiations happen together, just like you're manufacturing a product together that is going to go both to the federal government and to private parties. And I understand at least some of the cases on that to say, like, well, if the federal government is controlling the specifications by which you have to make that product, then we might have federal officer removal. But I'm just trying to understand here, like, what are the specifications kind of over the product or over the negotiation itself that OPM makes? I think the one I heard was you have to try and get a good price. But everything else seems to be like the outgrowth of it, the price, what gets passed on. That's correct, Your Honor, that there is not that amount of dictation in the OPM regs regarding exactly how this is performed. But it is performed together to get the best price. It is distinct from selling a product off the shelf because of that close degree of oversight that is provided in the OPM standard contract and in the contracts between the subcontractor contract that... The more OPM regulates this, I just want to make sure I'm understanding this, doesn't that undermine the indivisibility point? I'm sorry, Judge Sutton. The more OPM regulates how the PBMs work when it comes to the federal government's requirements, doesn't that undermine the indivisibility point? In other words, maybe I'm not understanding how this works, but it seems to me one import or one inference you can draw from Judge Bloom-Katz's questions is whether you think it's a lot or a little, there are clearly some federal rules you have to follow. Doesn't that prove it can't be indivisible, the negotiations? I don't think that more regulation of it and a closer hold on the specifics would negate that, would make it so that it couldn't be done together or shouldn't be done together. Certainly if the federal government dictated that it shall not be done together, then it would not be done together and we wouldn't be having this argument. I'm not sure if I'm grasping the point. Maybe I'm the one missing. The way I'm imagining it is PBMs are doing this negotiation. Some of it involves ultimately federal employees, right? So the indivisibility is you've got federal employees and we'll call it private. If we want, let's just call it two baskets to simplify it. The more the federal side is regulated, doesn't that make it harder to say the negotiations were indivisible? I don't think so, Your Honor, and I'd refer you to the other side of the case, which is not addressed in the First and Fourth Circuit. This complaint from Ohio is broader than those insulin cases. The complaint also attacks pharmacy negotiations. So PBMs not only negotiate with drug manufacturers, but they also negotiate for lower prices at pharmacies, lower reimbursement. The complaint attacks those as one-sided negotiations that are too low in terms of reimbursement. And there, under TRICARE and DoD, we are heavily regulated and we've submitted, I think it's like a 1,200-page contract from DoD that specifies in a lot more detail the types of things that must be negotiated for in the contracts. And there are still indivisible negotiations there with the pharmacies. DoD is trying to get the best deal, and by bringing the volume together, you get the best deal. So that's a situation where there is more regulation, but it's still indivisible.  This one is clueless, but just to make sure I'm getting this, OPM is only regulating when it comes to PBMs' work that applies to, say, federal employees, whether military. Am I right about that? Well, there's – That's not a broader regulation of – Correct. Okay. With one clarification, there's two sets of regulations that are important here. There's OPM and then a separate regime under DoD and TRICARE. And that's for – That part I got. I just want to make sure I got it. OPM just goes for federal employee health benefits. And the way you would say it's indivisible is you're still doing price. It's still a price for everybody. So back to my two buckets, you've got federal on the other side, private on the other. You're now negotiating with the manufacturers. So on the back end of these negotiations, there are separate contracts to serve different clients by the PBM. But what's important is the theory of the case here is the increase in list prices, and that happened because of the unitary rebate negotiations. They happened at the same time. So, you know, if you were going to disclaim the federal conduct here somehow and not just the relief, you would have to dismiss the entire case. It would be an entirely different case. Counts 1, 2, and 3 all relate to this list price increase, which happened as a result of these unitary negotiations that we did on behalf of the federal government. So just to kind of put it in the three-part test that our circuit and many of the others have articulated, you're saying that the negotiation part, that they are doing the negotiation, is what they are doing acting under the federal officer. Well, I would put it a little differently, Judge Bloom-Katz, that we are acting under and we meet that prong because of the close relationship and the fact that the government itself would need to fulfill these functions if they were not contracting. For the related to prong, which I think is the only part of the prong that links the complaint, the only part of the test that links the complaint to the federal conduct, I think we meet that because of the indivisibility point, because of the unitary nature of the... So you're saying, so the relating to the... Sorry, let me try again. The negotiations, these inseparable negotiations that you're talking about, those are just related to generally the relationship where the PBMs and the healthcare plans have to negotiate for drug prices, and that's kind of enough as long as they relate. It doesn't matter whether OPM itself is really directing the negotiations or putting constraints on the negotiations. That's irrelevant. That's correct, Judge Bloom-Katz. I think that's consistent with the text of the statute, which says related to, which is typically interpreted very broadly. There was an amendment in 2011 prior to that date. It just said four acts under federal... Now it broadened that. Now it's related to, and as your honors may be aware, the Supreme Court has recently granted cert in the Chevron versus Plaquemines Parish case, which may address this second prong in more detail. Our position is that result does not matter because of the unitary nature and the theory of the complaint here in terms of the impact on list prices that we meet at that second prong, no matter what the Supreme Court rules. Can I ask you a totally different scenario just to try and make sure I'm understanding your argument? Maybe my hypothetical is not analogous and you can tell me why. But if they're building a new hotel here in Cincinnati, and they haven't built it yet, and the federal government goes in and negotiates with the company that's building it and says, okay, we want to have federal judges stay there, federal employees stay there, and we want to have a 10% discount on the price, and we want only these blackout dates, and we want the judges to be able to have flexibility in changing their dates without penalties. But we're not going to control or say how you can negotiate with other private companies that might want to stay at the hotel and what their rates are and whether you give them a discount or not or anything like that. We're also not telling you how to build your hotel at all. Now, let's say the hotel is built with asbestos, and a private party that's staying there all the time sues the hotel. Because you have this contract with a federal government that kind of controls the pricing that the federal government gets for staying at the hotel, do you have federal officer removal for the asbestos claim? I would not think so, Your Honor. No. Because the federal government hasn't controlled the building of the hotel, right? I think it's more it doesn't relate to the conduct. The conduct in that situation that the federal government is or that is done under color of federal office is the pricing back to the federal government, and it's the blackout dates, it's not the construction. Here it's very different. The conduct that's being attacked in the complaint is the rebate negotiation that supposedly drives up the list price, and that is done under color of federal office. And I'm sorry, Your Honor, I see I'm up on time. No, you're answering our questions. Thank you. Get your full rebuttal. We'll hear from the state. Good morning. Good morning. Chief Judge Sutton, Judge Boggs, Judge Blumkatz, may it please the court, Mike Endershot here on behalf of the state of Ohio. I want to continue the conversation by picking up with, I think, the question about what is regulated here. And I think maybe to build off Judge Blumkatz's asbestos-filled hotel hypothetical, I think we all agree that wouldn't qualify if there was a lawsuit by a private guest that sued for mesothelioma or something like that. Let me relate that to an Outer Circuit case that I think is simpler than the contracts here but I think illustrates the level of generality that the courts must approach the question of, what is the federal conduct? This case is Graves v. 3M out of the Eighth Circuit. What you had there were military-grade earplugs, so these were manufactured identically to military specifications, then distributed in two different channels, one to the military with a certain set of instructions, one to private folks that wanted this tactical gear with a different set of instructions. Then you had lawsuits on a failure-to-warn product liability theory, and the Eighth Circuit said those cases brought by plaintiffs who received earplugs through the military channels, those are removable, but those distributed, even though they're the same product, because there were different warnings associated with each distribution, those distributed to the private recipients. I thought that case turned on the fact the federal government hadn't worked on the instructions and warnings, which makes it more like the asbestos case. I thought his key point at the end is the theory of the case is rebates and prices, and that's where the federal government is involved. Is that the whole issue here? The whole issue is what conduct do you look at? In Graves, the common conduct, where it was unitary, was the manufacturing and, indeed, the military's involvement in designing the product. Where you had different conduct was. . . But I thought in that case the federal government was not involved in the warnings and instructions. They were not involved. . . That's what led the Eighth Circuit to do what it did. They were involved in the warnings to the military. They were not involved in the warnings to the private recipients. Bingo. So here. . . Bingo, but here I thought the whole point was maybe this is what you have to explain to us, that no, no, no, there isn't indivisible negotiations. There really is two buckets, and you can look one direction for one bucket, and then when you talk about the feds, you look in the other direction. If that's true, that seems to really help your case. Yes, and here's why there are two buckets. It's not. . . We think whether there's divisible negotiations themselves is a fact question, so we have to take that as it is for now without any kind of discovery. But here's why there are two buckets. The relevant conduct, like in Graves, the relevant conduct, the liability-producing conduct that was the focus of the complaint were the instructions. Here, the liability-producing conduct in our complaint is largely twofold. It is the PBM's control over the drug formularies and the failure to pass through 100% of the rebates to Ohioans who are on private plans or on state government plans. So the key conduct here, why you have two buckets, is the very conduct that we say in our complaint is wrongful is barred under the federal contracts. So when the PBMs act to the federal government, they must do things like pass through all of the rebates and they must follow the formularies set by the federal contracts. We're trying to do the same thing for non-federal employees through the complaint. So you have, instead of government control, you have government saying you may not do the very things that are the subject of our complaint. And that's why you have two buckets. The very things we say are wrongful are not in the control of the federal government. They do not control the rebates that the PBMs must pass through or not to private clients or to those under state plans. They also do not control, I think you heard my friend say, OPM does not control the rebates that are paid to those under commercial plans in Ohio. They do not control the formulary. The OPM regulations only control the conduct as to the federal. Tell me just what I'm missing here, but you get discounts with volume, right? That's the intuition behind their side of the case. The volume is everything, right? And so that's why their leverage is larger. What am I missing on that point? You may get discounts with volume, but the wrongful conduct is not the discount itself. The wrongful conduct is using formula. Not passing it through. Not passing it through, that's right. And that differs between the federal bucket and the everyone else bucket, the state plans and the private plans. And that's because of the federal regulations. Right, the federal regulations do not control that. Let me offer you a case from this court, even though it's unpublished. We think its reasoning shows and illustrates this point, and it's more complicated than Graves, but it is from this circuit. It's the Ohio State Chiropractic Association versus Humana. That case, you had Medicare Advantage organizations, so they have federal contracts. Their sole purpose is to distribute a federal benefit, Medicare benefits, to Medicare recipients. They then go out and they are the intermediary with health care providers and getting that delivered to the recipients. Well, this court said there was no acting under, under that part of the statute, because the federal government did not control what was the subject of that dispute, which was a dispute between the Medicare Advantage organization and the health care provider. That was only private competitors. I mean, only private, yeah. That was only for the private side. Isn't that what, isn't that the point of the distinction we made there? No, as I read that case, Your Honor, so they were, the conduct that the Humana, in that case, which was the Medicare Advantage organization, it was doing an entirely government function. It was distributing Medicare benefits. The lawsuit was about its negotiation for federal benefits with a private health care provider. Just like here, there are federal contracts here in the same zip code, but the conduct that we allege is wrongful. To put it in what the Supreme Court has said in Watson, the act you must focus on is the subject of the complaint. The subject of the complaint here is the wrongful conduct that is the heart of our complaint. It is manipulating formulary placement and failure to pass through rebates. So there I think you have a tighter nexus in that chiropractic association case, because the only thing the Medicare Advantage organizations can do is to distribute a federal benefit. That's not true here. All the conduct that is the focus of our complaint is not distributing federal benefits. It is, we say, wrongful conduct towards Ohioans on private plans and Ohioans in state-sponsored plans. But it doesn't reach the things that are controlled by the federal government. In fact, our theory of the case really is to protect Ohioans who are not federal employees in the same way that federal contracts protect federal employees by saying those rebates should have been passed through. There should not have been manipulative formulary placement as a way to manipulate those prices. The other courts of appeals that have dealt with this, did they just get it wrong, or do you think those cases are different? I think they have not. Including Judge Acuda's opinion. Including, yes, including Judge Acuda's opinion. I recognize that makes the scorecard 0-3 for me. I think they do miss this level of generality problem. They do not focus, as Watson from the Supreme Court directs, the subject of the complaint. And the subject of the complaint here is the conduct that we allege is wrongful. I think Graves and the Ohio Chiropractic Association case illustrate that you focus on the wrongful conduct, not just something that is somewhere in the vicinity, some federal conduct that is in the vicinity. In that Chiropractic Association case, you undoubtedly had federal conduct nearby, because you were distributing it. Your complaint is very long. I had it printed out with the idea I would read the whole thing, and when I saw how long it was, it was like a lot of books I haven't read. So I haven't yet read it yet. That makes both of them. I haven't yet read it yet. But it really does – I'm just curious. Does it really have a story that says we're not attacking anything that relates to federal employees? It doesn't really say that, right? It doesn't say it in that way. That's where the disclaimer helps explain what is in the complaint. But I will say the theory at the core of the case – Just forget the disclaimer. I mean, maybe there was a way to write a complaint that does this. But I thought the complaint, at least parts I've looked at, had nothing to do with this segregation you're talking about. It's not captured at all. If you look at pages 1321 to 1323 of the complaint, there we talk about manipulating formulary placement, and this is quoted from the complaint, the PBMs retaining the lion's share of the rebates. I mean, that is the absolute heart of the complaint right there. You didn't write a complaint that said we're disinterested in federal employees. Well, we did in this way. Admittedly, it doesn't say it in words like that, but the complaint deals with when PBMs have control over formularies and control over the rebates. They lack that control when they interact with the federal government. So the complaint cannot reach those under federal health plans because the entire theory of the case is control over two things that the PBMs lack control of when they operate for the federal government. Much of your complaint also talks about kind of the broader scheme and how all of the different parts work together, including the negotiations and how it kind of increases prices and therefore the rebates, and then because you don't have this pass-through like you do have for the federal government, if we are to kind of look more holistically or more generally at what is in the complaint rather than just kind of looking at these pass-through elements or the formulary elements that are different between the state and private plans and the federal government plans, I'm curious still, like, how do you see the federal government's control over the negotiation part of this scheme itself, right? I mean, to the extent that your complaint talks about the negotiations where the PBMs are talking, you know, negotiating at scale with manufacturers to get rebates, you know, is that conduct that is, you know, arising under the federal government's authority that's directed by the federal government? I mean, it certainly happens and certainly, you know, they want particular outcomes of it, but is it directed enough to withstand federal officer removal? Well, I know I keep coming back to this same case, the Ohio Chiropractic Association case, but I think there, by looking at that case, I think it can show you a path forward in this case, and that is because the conduct there, distributing Medicare benefits, was controlled by the federal government, but the particular billing dispute that was attempted to be removed in federal court was not controlled. I think you heard my friend say the OPM regulations do not go down to the level of the specifics of the negotiation that are the heart of our complaint, the wrongful parts of what happened there, the failure to pass through and control over the formularies. Does it otherwise control the negotiations? Like, if we take back to Graves, the Eighth Circuit 3M case that you were talking about, like, what if there was a design defect claim there, right, and the government, you know, had worked with the company on the design itself, as it had, that there was a design defect claim. Would you agree that there would be federal officer removal there? If there was a design defect and the specifics of the design conflicted with state tort law, that would make it like Boyle's or the classic. Right. That would be removable. It would also, I think, intersect one element we haven't talked about at all here. Why isn't that this case? Why isn't this case where the federal government kind of controls this negotiation and things like that, and now, you know, to the extent we read your complaint as attacking the negotiation and not just the pass-through or the formularies, why isn't it not like the Graves situation but with a design defect claim? Because I think the focus has to be, as the Supreme Court said, the thing that is the subject of the complaint, the action that is the subject of the complaint. And so let me refer to another Supreme Court case. Mesa, mail carrier, car accident, Mesa versus California. It didn't matter that the mail carrier turned on, of course, the colorable federal defense. It didn't matter that the mail carrier was, of course, doing a federal activity. It mattered that they did not control. In fact, the federal government, like this case said, followed the traffic laws, and the state suit there was you breached the state traffic laws, not removable. In the same way here, there is general federal control in the zip code. There is not control over the liability-producing action. The liability-producing action here is formulary control as well as the failure to pass through rebates. Your Honors, before the Ohio Attorney General, on behalf of Ohioans bringing Ohio claims, is told that he must be in federal court and not in the courts of its own sovereign, I think the court should be absolutely sure that federal law commands that. We think that is true as a matter of the level of generality here in cases like Watson and Mesa. But if you have doubt and you think it actually turns on the factual question of divisibility, then we would encourage you to direct Judge Watson to oversee jurisdictional discovery. You didn't ask for that before. I don't know. I'm a little reluctant to indulge that. I mean, I'm not being offensive to you, but just why? If you really thought that was a good idea, I just don't like these second bites at the apple. I don't think it's a second bite at the apple, Your Honor, in this sense. And then, of course, federal officers. You asked for jurisdictional discovery before Judge Watson, before he ruled on it. It is certainly, it would have been possible to ask for, but what I would say is the focus of the notice of removal was, if you look at pages four to six of the notice of removal, the focus was there are federal employees in Ohio. There are people under the Department of Defense plan that reside in Ohio. And so that was the focus of the fight in the district court. As the theory has sharpened in this court from my friends here, this indivisibility point, you can see at page 43 of our brief, reasons to doubt that it truly is. Wait, no mystery there. That's exactly the reason for the other courts. If you had to put your finger on one thing that explains Judge Akuta's opinion, the other circuit court's opinions, it's indivisibility. That was not a mystery that suddenly was unveiled. Well, those cases all post-date the Judge Watson's decision. So that's what I mean. That issue has become sharpened by other circuit decisions and the way. The jurisdictional discovery is going to be exactly how these negotiations work and how indivisible they really are. That's the discovery we're talking about? I think that would be. That's what the District of Hawaii did. Because I take my friend's theory to be because they're indivisible, because they can't approach the drug manufacturers on behalf of this basket of clients and this basket of clients, that that is the reason there is removal. How does that relate to the rules about theory of the case in terms of Acker? Who benefits from that, you or the other side? I read Acker, Your Honor, to be about the legal theory of the case, not the factual dispute. So I don't think Acker says anything about accepting a factual allegation in a notice of removal because that is something that is like a well-pleaded complaint standard, the Supreme Court's DART decision. Besides the Hawaii case, is there a good example of a, let's say, court of appeals or U.S. Supreme Court case that said, boy, this is kind of tricky. We really don't know what's going on. We think jurisdictional discovery is the way to go here. Well, there certainly is jurisdictional discovery in other cases. In this context. No, no, no. I'm talking about this context. No, I'm not aware of any circuit or higher level discussion about jurisdictional discovery in this context, no. But your primary theory is that the kind of separability of the negotiations is not relevant because what you're really not challenging is the negotiation itself.  I've opened up an entire other line here as I was attempting to exit the lecture. I just want to make sure I understand your argument. Yes. It's entirely a backup point. Our primary point is you can forget about the indivisibility because the level of generality, you can see from the face of our complaint what the theory is, and you can see from the documents they attach that the federal government controls those things in a way that they're not controlled when they act for the federal department. I'm just going to read you from paragraph 210, back to my point about how long this was. Defendants, quote, have realized and enjoyed ill-gotten gains as a direct result of the increased rebates the manufacturers are required to pay under agreements with Defendant Express Scripts, resulting in supra-competitive list prices. So, I mean, that's part of the whole negotiations with the PBMs and the manufacturers, right? That's how that bad thing would happen. The bad thing ultimately happens because of the failure to pass through the rebates and the control over the formula. We think the same mechanism is not possible when they act for the federal government. The prices are bad by themselves. That's part of your complaint. That's what that's saying. That's not just a rebate point. Well, it is a rebate. I assume the Attorney General is complaining about high prices in general. Yes, but, of course, prices you have to net out. If there's a rebate passed through, that would change the effective price for federal clients versus non-federal clients. I read this to be saying, yeah, there's the rebate problem, but there's a high price problem. But it's not a high price if everybody is getting the rebate just like federal employees are getting the rebate. Correct. The high price doesn't have concrete injury to it if there is a rebate. All right. Well, I think we understand your argument, or at least I'm getting close. Thank you. Thank you. So, hey, rebuttal. Thank you very much. Thank you. Is there a way they could – well, you say what you're – I'm sorry to interrupt. You say what you're going to say, and I have a question, but go ahead. I'd just point out one thing, Judge Sutton, and then I'm here to answer your questions. But you referred to paragraph 210. I would also refer you to 209, which says, Ohio purchasers of drugs who are uninsured, underinsured, or have copays or deductibles calculated on the basis of list price have been injured because of the super competitive prices of drugs set by this combination. So I think your suggestion that that is the injury here is borne out by the complaint itself. Would there have been a way to write this complaint so that it wouldn't be removed? In other words, they – we know the things they're unhappy with. We now have an acknowledgment that they're not really trying to – it's almost as if they could – they would have written the complaint to say, we don't want to touch federal employees. Is it possible to have written this complaint in a way that it would stay in state court? I think it would be a wholly different theory. It's a hypothetical. I got the whole thing there. So you're not making any admissions. I'm just trying to – it seems a little – it bothers me a little bit if your theory of victory is a theory of victory by which they could never have written this complaint because I don't think they were paying attention to this. I mean he pointed out these cases came along later. The indivisibility point comes along later. That's fair. That's a difficult thing for a lawyer, but is there not a way to write – can you win and there still be a way that a state could file this complaint and keep it in state court? Not this complaint. So if they don't go after the – what we've just been discussing in 209 and 210 about the impact of list prices on individuals who pay a portion of list price at the pharmacy counter, maybe there's a theory there. Maybe if they just limited it to the contract we have with Ohio plans and what we pass through and not the impact of rebates on list prices or the impact of our negotiations on pharmacies, which weren't addressed at all, which is a wholly separate and independent basis for removal, then maybe. But we'd have to see that complaint. It would be a very different case. What about the misrepresentation claim? So we have the antitrust claims and things like that, but there's also deception claims like you're not being straight with private consumers, Ohio state government plans and things like that about whether they're getting rebates on the best prices and things like that. Do you have federal officer removal from that? Because that's, of course, also interconnected with the negotiations themselves. I think Judge Blumkatz, it would depend on the nature of the misrepresentations. Certainly, there are – there could be – Well, if they're saying – like, look, take their misrepresentation claim here. We don't have that hypothesized. They have one. So I would have to go back, Your Honor. I'm not certain I have in mind all of the misrepresentations that they – Well, I'll give you a hypothetical then. Like, what about the misrepresentation of, like, that you're getting rebates, that you're getting the best price possible, or if you're getting the same price as others or something like that, the same price that everybody else is getting for this drug? You know, they're essentially misrepresenting to consumers the deal that they're getting on a particular drug. So if the misrepresentations relate, Judge Blumkatz, to the federal conduct, to those unitary negotiations, I think there probably would be. I think the devil would be in the detail, and we'd have to see. Even though they're, like, representing something completely different – I mean, this starts to sound like graves, right? Like, they're representing something completely different to federal employees because of the OPM regs and the rebates and the audits and those things as they are representing to Ohio and private plans, right? But – so it's totally separate representations. But even then, you wouldn't be able to – you would be able to remove. I think, Your Honor, that does get a lot closer to graves. And there is a line there where, at some point, representations just to the private individuals are more in the graves context or, like, Ohio chiropractic case, a little bit more away from federal conduct. Whether the exact hypothetical that you raised – I think it really would depend if they are attacking representations about the unitary negotiations. I think there may be an argument, but we'd have to – What's your take on Ohio State contract on chiropractors? Do you think that's correctly decided, and why does it apply here? I realize – don't say anything about it being unpublished, but keep going. Yes, Judge Sutton, I think it is correctly decided. I think the MAOs there, to your point, serve the private industry, and they're heavily regulated, and courts have said that mere regulation isn't sufficient. I think what this case is a lot more like is the MACs or the Medicare administrative contractors under Part B that are referenced in that case, Part B of the Medicare regime, that are federal contractors, or at least that opinion suggested that they would be. All right. Well, thank you very much to both of you. We're lucky to have great lawyers here on a difficult case, so we're very grateful for your answering our questions and trying to understand this and for your excellent briefs. So thanks to both of you. Really appreciate it. The case will be submitted.